UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE _____, JUDGE

|  |  |
|---|---|
| MAQUILACERO S.A. de C.V. and TECNICAS DE FLUIDOS S.A. de C.V., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Court No. 23-00091** |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs Maquilacero S.A. de C.V. ("Maquilacero") and Tecnicas de Fluidos S.A. de C.V. ("TEFLU") (collectively, "Maquilacero/TEFLU"), by and through their undersigned attorneys, allege and state as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. This is an appeal from the final results of the antidumping duty administrative review of *Light-Walled Rectangular Pipe and Tube from Mexico* ("LWR from Mexico"). The period of review is August 1, 2020 through July 31, 2021 ("POR").

2. On March 14, 2023, the U.S. Department of Commerce, International Trade Administration ("Commerce") published its final results that sales of LWR from Mexico were made at prices below normal value during the POR.  *See Light-Walled Rectangular Pipe and Tube From Mexico*, 88 Fed. Reg. 15665 (Dep't Commerce Mar. 14, 2023) (final AD results; 2020-2021) ("*Final Results*"). The accompanying Issues and Decision Memorandum was issued on March 7, 2023.  Memorandum from J. Maeder to L. Wang, re: Light Walled Rectangular Pipe

and Tube from Mexico: Issues and Decision Memorandum for the Final Results of Antidumping Administrative Review; 2020-2021 (Mar. 7, 2023) ("*Final I&D Memo*").

## JURISDICTION

3.     Plaintiffs bring this action pursuant to Sections 516A(a)(2)(A)(i)(I), 516A(a)(2)(B)(iii) and 516A(g)(3)(A)(i) of the Tariff Act of 1930 (the "Act"), codified at 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), 1516a(a)(2)(B)(iii) and 19 U.S.C. § 1516a(g)(3)(A)(i). Plaintiffs contest Commerce's *Final Results*, and specifically the final antidumping duty rate applied to Plaintiffs. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

4.     Plaintiffs are interested parties under Sections 516A(f)(3) and 771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively. Maquilacero is a Mexican manufacturer and exporter of light-walled rectangular pipe and tube (the "subject merchandise"), and TEFLU is a producer and exporter of automotive parts made from the subject merchandise. In the contested determination, Commerce collapsed Maquilacero and TEFLU treating them as a single entity. *Final Results*, 88 Fed. Reg. at 15666-15667 (calculating a margin for Maquilacero/TEFLU). Both Maquilacero and TEFLU were parties in the contested administrative review. Specifically, Plaintiffs were mandatory respondents in Commerce's administrative review and participated actively at all stages of the proceeding. Plaintiffs, therefore, have standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

5.     The *Final Results* were published in the *Federal Register* on March 14, 2023. The *Final Results* involve a "free trade area country," within the meaning of 19 U.S.C. § 1516a(f)(9); therefore, Plaintiffs filed their Notice of Intent to Commence Judicial Review with the U.S. and Mexican Secretaries to the United States-Mexico-Canada Free Trade Agreement ("USMCA") on

April 3, 2023, which is within the deadline set forth in 19 U.S.C. § 1516a(g)(3)(B) of the Act (*i.e.* within 20 days after the date the contested determination was published in the *Federal Register*).

6. This Complaint is being filed simultaneously with the filing of the Plaintiffs' summons in this action on May 3, 2023, which is within the deadline for commencing judicial review in cases involving merchandise from free trade area countries, such as Mexico, under Sections 516A(a)(2)(B)(iii) and (a)(5)(A) of the Tariff Act, 19 U.S.C. §§ 1516a(a)(2)(B)(iii) and (a)(5)(A) (*i.e.* within 30 days of the 31st day after which the contested determination was published in the *Federal Register* pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 1516a(a)(5)(A)). Therefore, Plaintiffs' Complaint is timely.

## STANDARD OF REVIEW

7. This Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole, or is "otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

8. When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006). Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotations omitted)). The substantial evidence inquiry takes into account the entire record, which includes evidence that supports and detracts from the conclusion reached. *Nippon Steel*, 458 F.3d at 1352.

9. This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to

provide an adequate basis for its conclusions." *Rhone-Poulenc, Inc. v. United States*, 20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

## **STATEMENT OF FACTS**

10. Maquilacero manufactures and sells commercial LWR tubing produced to ASTM A-513, the Standard Specification for Electric-Resistance-Welded Carbon and Alloy Steel Mechanical Tubing, to customers in the home market and the United States. Maquilacero's affiliated party, TEFLU, a Mexican producer of automotive parts for original equipment manufacturers ("OEM") uses LWR tubing produced by Maquilacero as an input into its own production of auto parts or other end products. *See* Letter from Arent Fox LLP to Hon. G. Raimondo, Re: *Light-Walled Rectangular Pipe and Tube from Mexico;* Maquilacero S.A. de C.V.'s Section A Questionnaire Response (Dec. 1, 2021) ("Maquilacero Section A QR") at A-16 and Exhs. A-4, A-32. The input LWR tubing is further processed by TEFLU in its own facilities, using distinct production equipment and machinery, into a new product that is customized for a single use, in a specific automotive subassembly. In other words, the products made by TEFLU are customized to a single customer for a single end use in a specific subassembly, unlike commercial LWR tubing produced by Maquilacero that is made to standard specifications and sizes. The parts produced by TEFLU from LWR tubing are sold as parts, not as LWR tubing.

11. On October 7, 2021, Commerce initiated the 2020-2021 antidumping administrative review of LWR from Mexico. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 86 Fed. Reg. 55811 (Dep't Commerce Oct. 7, 2021). Commerce initiated the administrative review pursuant to 19 C.F.R. § 351.221(c)(1)(i). The review covered entries from August 1, 2020 through July 31, 2021.

12. Relying on the previous administrative review, Commerce collapsed Maquilacero and TEFLU and selected "Maquilacero/TEFLU" as one of the two mandatory respondents in Commerce's administrative review. Because Commerce collapsed Maquilacero and TEFLU, the two companies provided responses to Commerce's initial antidumping questionnaire, supplemental questionnaires and submitted legal arguments throughout the proceeding.

13. Another affiliated party, Abinsa S.A. de C.V., a steel reseller and steel service center, purchased LWR tubing from Maquilacero for resale to its own customers and also provided its downstream sales information to Commerce, as directed in the questionnaire.

14. From its first questionnaire response in this review, Maquilacero/TEFLU explained that the parts produced by TEFLU from LWR tubing are new downstream products distinct from the input LWR tubing that are not covered by the scope of the antidumping duty order on *Light-Walled Rectangular Pipe and Tube from Mexico* (the "*Order*"). *See e.g.* Maquilacero Section A QR at A-22, A-33 and Exhs. A-4, A-6, A-14 and A-32.

15. While Maquilacero/TEFLU reported to Commerce the sales of TEFLU parts in the initial Sections B and C questionnaire responses, Maquilacero again argued that the parts produced by TEFLU are outside the scope of the *Order*. At the same time, Maquilacero/TEFLU also requested that Commerce at the very least include a "further processing" characteristic in the control numbers to account for the significant differences in the products made by TEFLU, which were further processed. *See* Letter from Arent Fox LLP to Hon. G. Raimondo, Re: *Light-Walled Rectangular Pipe and Tube from Mexico*; Maquilacero S.A. de C.V.'s Section B Questionnaire Response (Dec. 17, 2021), at B-22; *see also* Letter from Arent Fox LLP to Hon. G. Raimondo, Re: *Light-Walled Rectangular Pipe and Tube from Mexico*; Maquilacero S.A. de C.V.'s Downstream Sales Response for Tecnicas De Fluidos S.A. de C.V. (December 28, 2021),

at BA2-15 . To this end, Maquilacero/TEFLU included a second control number in the sales databases for Commerce to use to distinguish the products from the two companies. *See id.*

16. In its questionnaire responses, Maquilacero/TEFLU explained that certain sales made by TEFLU under the Mexican IMMEX program and intended for export production, also referred to as "virtual exports", were invoiced to customers located outside of Mexico. While these sales were delivered to a location in Mexico, under the IMMEX program the products were treated as export sales. *See* Letter from ArentFox Schiff LLP to Hon. G. Raimondo, Re: *Light-Walled Rectangular Pipe and Tube from Mexico*; Maquilacero S.A. de C.V.'s First Supplemental Sections A&D Questionnaire Response (Jul. 26, 2022) at 39.

17. On September 8, 2022, Commerce issued the preliminary results calculating an antidumping duty rate of 3.11% for Maquilacero. *Light-Walled Rectangular Pipe and Tube From Mexico*, 87 Fed. Reg. 54965, 54966 (Dep't Commerce Sept. 8, 2022) (prelim. results & partial rescission of AD review; 2020-2021) ("*Preliminary Results*"). Commerce's factual and legal conclusions underlying its *Preliminary Results* are set forth in the Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review: Light-Walled Rectangular Pipe and Tube from Mexico; 2020-2021 (Dep't Commerce Aug. 31, 2022) and the Analysis Memorandum for Maquilacero. *See* Memorandum from K. Clahane to The File, re: Maquilacero S.A. de C.V. and Tecnicas de Fluidos S.A. de C.V.'s Analysis Memorandum for the Preliminary Results of the 2020-2021 Administrative Review of the Antidumping Duty Order (Aug. 31, 2022).

18. In the *Preliminary Results*, Commerce continued to collapse Maquilacero and TEFLU despite the clear differences in products and production facilities. Commerce did not address Maquilacero/TEFLU's argument that the products made by TEFLU are outside the scope

of the order and asked no questions about these products, nor did Commerce use a further processing characteristic in the control number as proposed by Maquilacero/TEFLU or explain its decision to disregard this information. Commerce also preliminarily treated TEFLU's sales under the IMMEX program as home market sales for purposes of calculating the dumping margin.

19. After the *Preliminary Results*, Maquilacero/TEFLU submitted additional information with respect to the sales made by TEFLU under the IMMEX program in response to a supplemental questionnaire from Commerce. *See* Letter from ArentFox Schiff LLP to Hon. G. Raimondo, Re: *Light-Walled Rectangular Pipe and Tube from Mexico;* Maquilacero S.A. de C.V.'s Post-Preliminary Supplemental Questionnaire Response, (Oct. 5, 2022) at 5.

20. On November 15, 2022, Maquilacero/TEFLU filed its case brief, and on November 22, 2022, Maquilacero/TEFLU filed its rebuttal brief responding to arguments raised by Nucor Tubular Products Inc. ("Nucor") in its case brief. The case and rebuttal briefs were then resubmitted on November 29, 2022 at the request of Commerce to redact certain information identified as untimely new factual information. In its case brief, Maquilacero argued that downstream sales made by TEFLU are further processed and customized auto parts that are different from the LWR pipe and tube subject to the *Order*. Maquilacero's Case Brief at 1, and 5-13 (November 29, 2022).

21. Maquilacero also argued that, due to the differences in physical characteristics between Maquilacero's and TEFLU's products, Commerce should exclude TEFLU's products from the scope of the *Order*, or alternatively, Commerce should revise its computer program by preserving the manufacturer distinctions in matching the products produced by Maquilacero and

the downstream products made by TEFLU using the manufacturers reported in the field "FURPROCESSH/U". *Id*. at 2, and 13-17 .

22.  Next, Maquilacero argued that Commerce incorrectly collapsed Maquilacero with TEFLU in its margin calculations because TEFLU has no production facilities to produce pipe and tube and these companies operate independently of each other. While TEFLU and Maquilacero are affiliated, the two companies have separate production facilities, different production equipment, different production workforce, produce and sell different products, have completely separate customers, and hold different industry and customer certifications. *Id*. at 2, and 17-26.

23.  Maquilacero further argued that in the *Preliminary Results,* Commerce incorrectly reclassified certain sales Maquilacero/TEFLU made through the IMMEX program and reported as U.S. and third country sales as home market sales, because notwithstanding the fact that these sales were delivered to the customers' designated facility located in Mexico, at the time of the sale, Maquilacero/TEFLU knew the parts sold to an IMMEX customer will be incorporated into a product for export to the U.S. or other export market, and that Maquilacero considered the sales as export sales in its normal course of business. *Id*. at 3, and 26-29.

24.  Finally, Maquilacero/TEFLU challenged Commerce's application of differential pricing to calculate Maquilacero/TEFLU's margin in this proceeding in light of recent binding precedent remanding aspects of Commerce's differential pricing methodology. *Id.* at 29-34.

25.   Commerce issued the *Final Results* on March 14, 2023, calculating an antidumping duty margin of 9.20% for Maquilacero/TEFLU. The challenged determinations, findings and conclusions are set out largely in the accompanying *Issues and Decision Memorandum*. In the *Final Results*, Commerce continued to include TEFLU's downstream sales

of further-processed auto parts as subject merchandise. *Issues and Decision Memorandum*, at 12.

26. In the *Final Results*, Commerce declined to adopt the changes to the control number or making the computer programming change suggested by Maquilacero/TEFLU to preserve the manufacturer distinctions in matching the products produced by Maquilacero and the downstream products made by TEFLU. *Issues and Decision Memorandum*, at 24-27.

27. In the *Final Results,* Commerce continued to collapse Maquilacero and TEFLU in the margin calculation on the basis that no new record evidence has been provided indicating that the relationship between Maquilacero and TEFLU has changed since the prior determination that the two entities should be collapsed and treated as a single entity. *Issues and Decision Memorandum*, at 9.

28. In the *Final Results*, Commerce continued to treat TEFLU's IMMEX sales as home market sales alleging that Maquilacero/TEFLU did not demonstrate sufficient knowledge at the time of export that sales reported as "virtual export" sales were destined for export – either to the United States or a third country. *Issues and Decision Memorandum*, at 21. Finally, Commerce declined to make any changes to its zeroing methodology.

29. On April 3, 2023, Plaintiffs filed their Notice of Intent to Commence Judicial Review with the U.S. and Mexican Secretaries to the USMCA.

## STATEMENT OF CLAIMS

### COUNT I

30. The facts and allegations contained in paragraphs 1 through 29 are restated and incorporated herein by reference. The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law.

31. In the *Final Results*, Commerce should have excluded sales of further-processed auto parts made by TEFLU as such products are outside the scope of the *Order*. These products are further manufactured through several additional operations, including saw-cutting, laser cutting-to-length, drilling, perforation and/or bending. The differences in physical characteristics imparted by the further processing substantially transformed the products into distinct downstream products that are no longer covered by the scope of the *Order*.

32. Commerce's refusal to exclude TEFLU's further-processed downstream auto parts from the scope of the *Order* is unsupported by substantial evidence on the record and is otherwise contrary to law.

## COUNT II

33. The facts and allegations contained in paragraphs 1 through 32 are restated and incorporated herein by reference. The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law.

34. In calculating the margins for this administrative review, Commerce should have revised its computer program to preserve the manufacturer distinctions in matching the products produced by Maquilacero and the downstream products made by TEFLU using the manufacturers reported in the field "FURPROCESSH/U". TEFLU's products are further manufactured through several additional operations, including saw-cutting, laser cutting-to-length, drilling, perforation and/or bending. Maquilacero reported the manufacturers in the field "FURPROCESSH/U" in order to account for the physical and commercial differences between commercial LWR pipe and tube sold by Maquilacero and the product sold by TEFLU which has been further processed and transformed into a new product, *i.e.* an auto part.

35. Commerce's refusal to modify its computer program to account for the significant physical and commercial differences in the products made by Maquilacero and TEFLU is unsupported by substantial evidence on the record and is otherwise contrary to law.

## COUNT III

36. The facts and allegations contained in paragraphs 1 through 35 are restated and incorporated herein by reference. The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law.

37. Commerce's determination to continue collapsing Maquilacero with TEFLU based on its past determination reached in the 2018-2019 review, without addressing the information on the record showing that the regulatory requirements under the collapsing regulation, 19 C.F.R. § 351.401(f), are not met in this administrative review is unsupported by substantial evidence on the record and is otherwise contrary to law.

## COUNT IV

38. The facts and allegations contained in paragraphs 1 through 37 are restated and incorporated herein by reference. The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law.

39. Commerce should have classified Maquilacero/TEFLU's virtual export sales made through the IMMEX program as U.S. sales or third country sales. Notwithstanding the fact that these sales were delivered to the customers' designated facility located in Mexico, at the time of the sale, Maquilacero knew the products sold to an IMMEX customer will be incorporated into a product for export to the U.S. or other export market, and that Maquilacero considered the sales as export sales in its normal course of business.

40. Commerce's classification of Maquilacero/TEFLU's virtual export sales as home market sales is unsupported by substantial evidence on the record and is otherwise contrary to law.

### COUNT V

41. The facts and allegations contained in paragraphs 1 through 40 are restated and incorporated herein by reference. The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law.

42. Commerce's differential pricing analysis with respect to Maquilacero/TEFLU's sales is contrary to law because certain aspects of this analysis, in particular, Commerce's application of the Cohen's *d* test was found to be unlawful by the Court of Appeals for the Federal Circuit. *See Stupp Corporation v. United States*, 5 F.4th 1341, 1357-60 (Fed. Cir. 2021); *see also Mid Continent Steel & Wire, Inc. v. United States*, 940 F. 3d 662 (Fed Cir. 2019) and *Mid Continent Steel & Wire, Inc. v. United States*, 31 F.4th 1367 (Fed. Cir. April 21, 2022). Commerce's application of the Cohen's *d* test in this review using a discredited methodology renders this aspect of the *Final Results* contrary to law and unsupported by substantial evidence on the record.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

(a) Hold that Commerce's *Final Results* are not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiffs in this Complaint;

(b) Remand the *Final Results* to Commerce for determination consistent with the opinion of this Court; and

(c)     Grant such additional relief as the Court may deem just and proper.

**/s/ Diana Dimitriuc Quaia**
Diana Dimitriuc Quaia
John M. Gurley
Yun Gao
Mario Torrico

ArentFox Schiff LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 857-6291

*Counsel to Maquilacero S.A. de C.V. and Tecnicas de Fluidos S.A. de C.V.*

Dated: May 3, 2023

AFDOCS/17875922.2